## * * § 362 INFORMATION COVER SHEET * *

Anastasia Karamanides
DEBTOR

16-16106-btb          232169
Case No:                    MOTION #:

Pingora Loan Servicing, LLC
MOVANT

CHAPTER:
7

| *Certification of Attempt to Resolve the Matter Without Court Action:* |
|---|
| *Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.* |
| *Date:* 12/15/2016          *Signature:* /s/ Jason Kolbe |
| *See Exhibit "E" attached hereto.*          *Attorney for Movant* |

PROPERTY INVOLVED IN THIS MOTION: 2722 Port Lewis Avenue, Henderson, NV 89052
NOTICE SERVED ON:  Debtor ☒; Debtor's counsel ☐; Trustee ☒:
DATE OF SERVICE: 12/15/2016

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st  $289,585.46 | 1st |
| 2nd | 2nd |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: $289,585.46 | Total Encumbrances: |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |
| $320,071.00 according to Debtor's Schedules. | |

| TERMS of MOVANT'S CONTRACT with the DEBTOR: | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT: |
|---|---|
| Amount of Note: $279,837.00 | • |
| Interest Rate: 4.250% | • |
| Duration: 360 Months | • |
| Payment per Month: $1,918.11 Adjustable | • |
| Date of Default: February 1, 2016 | • |
| Amount in Arrears: $22,422.54 | • |
| Date of Notice of Default: | • |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: /s/ Jason Kolbe | |
| Jason Kolbe | SUBMITTED BY: |
| | SIGNATURE: |

*All amounts due to Movant are as of December 1, 2016.
**The amount of Movant's liens and arrears above do not include $931.00 for fees and costs that have also been incurred by Movant as of the date hereof in connection with seeking the relief requested in the Motion.

RCO Legal, P.S.,
Jason Kolbe, SBN 11624
2520 St. Rose Parkway, Suite 106
Henderson, NV 89074
Phone: 702-854-9965
Fax: 425-974-8665
Email: jkolbe@rcolegal.com
RCO File No. 232169
*Attorneys for Movant*
Pingora Loan Servicing, LLC

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

Anastasia Karamanides,

Debtor.

Case: 16-16106-btb
Chapter 7

**MOTION FOR RELIEF FROM
AUTOMATIC STAY (REAL PROPERTY)**

Hearing Date: January 23, 2017
Hearing Time: 10:00 AM

Pingora Loan Servicing, LLC ("Movant") hereby moves this Court, as to the Debtor and the Trustee pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of 2722 Port Lewis Avenue, Henderson, NV 89052 (the "Property"). In further support of this Motion, Movant respectfully states:

1. A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on November 15, 2016.

2. The Debtor executed and delivered that certain promissory note in the original principal amount of $279,837.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A. Movant is an entity entitled to enforce the Note.

3. Pursuant to that certain title of Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under the Note and the Deed of Trust with respect to the Loan are secured by the Property. A true and correct copy of the Deed of Trust is attached hereto as Exhibit B.

4.     All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain Assignment of Deed of Trust.  A true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit C.

5.     As of December 1, 2016, the outstanding Obligations are:

| Unpaid Principal Balance | $272,273.48 |
|---|---|
| Unpaid, Accrued Interest | $10,607.30 |
| Costs/Late Fees/Escrow Advance | $6,704.68 |
| Less:  Partial Payments | ($0) |
| Minimum Outstanding Obligations | $289,585.46 |

6.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $931.00 in legal fees and costs.  Movant reserves all rights to seek an award or allowance of such fees and costs in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

7.     The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 11 | February 1, 2016 | December 1, 2016 | $1,918.11 | $21,099.21 |
| | | | | Less partial payments: $0 |
| | | | | **Total: $21,099.21** |

8.     The fair market value of the Property is $320,071.00.  The basis for such valuation is Zillow.com.  A true and correct copy of the relevant page of Zillow.com is attached hereto as Exhibit D.

9.      Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $289,585.46.

10.      Cause exists for relief from the automatic stay for the following reasons:

(a)      Movant's interest in the Property is not adequately protected. Movant's interest in the collateral is not protected by an adequate equity cushion.

(b)      Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has insufficient equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay, as to the Debtor and the Trustee allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.      That Movant may stop filing and serving Notices of Payment Change and/or Notices of Post-Petition Fees, Expenses and Charges as required by FRBP 3002.1(b) and FRBP 3002.1(c) upon entry of an Order Granting the Motion for Relief from Stay; and

5.      For such other relief as the Court deems proper.

DATED this  15  day of  Dec.  2016.

RCO LEGAL, P.S.

By:  /s/ Jason Kolbe
Jason Kolbe Bar No. 11624
2520 St. Rose Parkway, Suite 106
Henderson, NV 89074
Tel: 702-854-9965
jkolbe@rcolegal.com

RCO Legal, P.S.,
Jason Kolbe, SBN 11624
2520 St. Rose Parkway, Suite 106
Henderson, NV 89074
Phone: 702-854-9965
Fax: 425-974-8655
Email: jkolbe@rcolegal.com
RCO File No. 232169
*Attorneys for Movant*
Pingora Loan Servicing, LLC

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>Anastasia Karamanides,<br><br><br><br>                              Debtor. | Case: 16-16106-btb<br>Chapter 7<br><br>**NOTICE OF HEARING ON MOTION<br>FOR RELIEF FROM AUTOMATIC STAY**<br><br>Hearing Date: January 23, 2017<br>Hearing Time: 10:00 AM |

**NOTICE IS HEREBY GIVEN** that a MOTION FOR RELIEF FROM AUTOMATIC STAY was filed on  12/15/16   by Jason Kolbe, Esq.  The Motion seeks the following relief: An Order terminating the automatic stay, to allow Movant to proceed with foreclosure of the subject real property located at 2722 Port Lewis Avenue, Henderson, NV 89052.   Any opposition must be filed pursuant to Local Rule 9014(d)(1).

**NOTICE IS FURTHER GIVEN** that if you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, then you must file an opposition with the court, and serve a copy on the person making the Motion ***no later than 14 days*** prior to the Hearing on the Motion, unless an exception applies (see Local Rule 9014(d)(3)).  The opposition must state your position, set forth all relevant facts and legal authority, and be supported by affidavits or declarations that conform to Local Rule 9014(c).

> **If you object to the relief requested, you *must* file a written response to this pleading with the court.  You *must* also serve your written response on the person who sent you this notice.**
>
> **If you do not file a written response with the court, or if you do not serve your written response on the person who sent you this notice then:**
>
>   - The court may *refuse to allow you to speak* at the scheduled hearing, and
>   - The court may *rule against you* without formally calling the matter at the hearing.

**NOTICE IS FURTHER GIVEN** that the hearing on the said Motion will be held before a United States Bankruptcy Judge, in the above-referenced Court located at 300 Las Vegas Boulevard South,  Las Vegas, NV 89101-5813 on January 23, 2017  at the hour of 10:00 AM

DATED this  15  day of  Dec.   2016.


RCO LEGAL, P.S.


By:  /s/ Jason Kolbe
Jason Kolbe Bar No. 11624
2520 St. Rose Parkway, Suite 106
Henderson, NV 89074
Tel: 702-854-9965
jkolbe@rcolegal.com

1

2

3

4

5

6

7   RCO Legal, P.S.,
    Jason Kolbe, SBN 11624
8   2520 St. Rose Parkway, Suite 106
    Henderson, NV 89074
9   Phone: 702-854-9965
    Fax: 425-974-8665
10  Email: jkolbe@rcolegal.com
    RCO File No. 232169
11  *Attorneys for Movant*
    Pingora Loan Servicing, LLC

12              **UNITED STATES BANKRUPTCY COURT**
                      **DISTRICT OF NEVADA**
13

14  | In re: | |
    | --- | --- |
15  | Anastasia Karamanides, | Case: 16-16106-btb |
    | | Chapter 7 |
16  | | |
    | | **[PROPOSED] ORDER GRANTING** |
17  | | **MOTION FOR RELIEF FROM** |
    | | **AUTOMATIC STAY (REAL PROPERTY)** |
18  | Debtor. | |
    | | Hearing Date: January 23, 2017 |
19  | | Hearing Time: 10:00 AM |

20

21         The Motion for Relief from Automatic Stay of Pingora Loan Servicing, LLC, its

22  successors and/or assigns ("Movant") came on regularly for hearing before the Court,

23  appearances as noted on the record.

24         The Court having read and considered the moving papers, having determined that the

25  moving papers were properly served, being fully advised, and good cause appearing:

26

27         IT IS HEREBY ORDERED ADJUDGED AND DECREED that Movant's Motion for

28  Relief from Automatic Stay is GRANTED. The automatic stay of 11 U.S.C. § 362(a) is

    terminated as to the Debtor and the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 362(d)(1)

                                    - 1 -

and/or § 362(d)(2) as to the collateral commonly known as 2722 Port Lewis Avenue, Henderson, NV 89052 ("Property") and legally described in the attached Exhibit "A" to allow Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

IT IS FURTHER ORDERED the 14-day period specified in Fed.R.Bankr.P. 4001(a)(3) is waived.  This Order shall be binding and effective despite any conversion of the bankruptcy case to any other chapter under Title 11 of the United States Code.

IT IS FURTHER ORDERED that Movant is exempt from further compliance with Fed. Bankr. Rule P. 3002.1.

SUBMITTED BY:


By:_____
Jason Kolbe Bar No. 11624
2520 St. Rose Parkway, Suite 106
Henderson, NV 89074
Tel: 702-854-9965
jkolbe@rcolegal.com


**RULE 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the Court's ruling and that (check one):

____ The court has waived the requirement set forth in LR 9021(b)(1).

____No party appeared at the hearing or filed an objection to the motion.

____ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

Counsel appearing:
Unrepresented parties appearing: None
Trustee: No Appearance at Hearing; No additional Service required.

_____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

**EXHIBIT A**

**LOT THREE (3) IN BLOCK C OF MARYLAND/EASTERN NORTH NO.3 - BY LEWIS HOMES, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 85 OF PLATS, PAGE 5, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.**

Assessor's Parcel Number:  177-36-612-032

**EXHIBIT A**

**PROOF OF SERVICE**

I hereby certify that I am an employee of RCO Legal, P.S., whose business address is 2520 St. Rose Parkway, Suite 106, Henderson, NV 89074. I am over the age of eighteen (18) and not a party to the within action.

On the date stated below, pursuant to Federal Rules of Civil Procedure and Local Rules, I served the documents described as: 362 MOTION FOR RELIEF COVER SHEET, MOTION FOR RELIEF FROM AUTOMATIC STAY, NOTICE OF HEARING ON MOTION FOR RELIEF FROM AUTOMATIC STAY, EXHIBITS and ORDER [PROPOSED], on interested parties either by placing a true and correct copy thereof in a sealed envelope with first class postage thereon fully prepaid in the United States Mail at Henderson, Nevada or by CM/ECF system as indicated below:

■  **a. ECF System**
**Chapter 7 Trustee**
Lenard E. Schwartzer
2850 South Jones Blvd, Suite 1
Las Vegas, NV 89146-5308
trustee@s-mlaw.com

**United States Trustee**
US Trustee - LV - 7
300 Las Vegas Boulevard, S. /Suite 4300
Las Vegas, NV 89101
USTPRegion17.LV.ECF@usdoj.gov

**(Other parties)**
PRA Receivables Management, LLC
PO BOX 41021
Norfolk, VA 23541
claims@recoverycorp.com

Santander Consumer Inc. dba Chrysler Capital
C/O Santin & McLeran, PLC
James B. Ball
400 South 4th Street, Suite 500
Las Vegas, NV 89101
ball@bsmplc.com

**b. United States mail, postage fully prepaid**
**Debtor**
Anastasia Karamanides
2722 Port Lewis Avenue
Henderson, NV 89052

**(Other parties)**
BMW Bank of North America
c/o Ascension Capital Group
PO BOX 165028
Irving, TX 75016

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this  _15_  day of December, 2016.

By:  _/s/ Esequiel Valerio_____
Esequiel Valerio

**EXHIBIT A**

Loan Number ▮                                              MIN: ▮

| Multistate | **NOTE** | FHA Case No: ▮ |

**May 5, 2014**
(Date)

**2722 PORT LEWIS AVENUE**
**HENDERSON, NEVADA 89052**
(Property Address)

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **CMG Mortgage, Inc, #1820** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED SEVENTY-NINE THOUSAND EIGHT HUNDRED THIRTY-SEVEN AND NO/100** Dollars (U.S. **$279,837.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND ONE FOURTH** percent (**4.250%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **July 1, 2014**. Any principal and interest remaining on the **1st day of June, 2044**, will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made at

**CMG Mortgage, Inc**
**3160 Crow Canyon Road, Suite 400**
**San Ramon, CALIFORNIA 94583**
or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. **$1,376.63**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge       ☐ Growing Equity Allonge       ☐ Other (specify)

---

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
IDS, Inc.

Page 1 of 3

Borrower(s) Initials ▮

EXHIBIT A

Loan Number:                              MIN:

**5. BORROWER'S RIGHT TO PREPAY**

    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

    **(A) Late Charge for Overdue Payments**

    If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **FIFTEEN** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent (**4.000%**) of the overdue amount of each payment.

    **(B) Default**

    If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    **(C) Payment of Costs and Expenses**

    If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

---

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
IDS, Inc.

Page 2 of 3

Borrower(s) Initials

Loan Number: ▮▮▮▮▮▮                                                    MIN: ▮▮▮▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
ANASTASIA KARAMANIDES                 -Borrower                                          -Borrower

CMG Mortgage Consultant: **JOSEPH C CORDONE**, NMLS #**366298**.
Sponsored by Creditor: CMG Mortgage, Inc., NMLS #1820

Pay to the order of

Without Recourse

**CMG Mortgage, Inc, #1820**

By : _____

                    ~~Yvette Olguin~~
Name and Title: _____ ~~Assistant Secretary~~

**FHA Multistate Fixed Rate Note - (10/95)**
VMP-1R (0210).02
IDS, Inc.                                          Page 3 of 3

**EXHIBIT B**

Inst #: 20140508-0002013
Fees: $26.00
N/C Fee: $25.00
05/08/2014 02:13:22 PM
Receipt #: 2018645
Requestor:
**FIDELITY NATIONAL TITLE · L**
Recorded By: JBR   Pgs: 10
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

I hereby affirm that this document
submitted for recording does not
contain any personal information about
any person(s) as defined by NRS 603A.040
on the document.

X _____
Signature
Print name & title    *Anastasia Karamanides*

APN#   **177-36-612-032**

RECORDING REQUESTED BY:

Name: **CMG Mortgage, Inc**

Address: **3160 Crow Canyon Road, Suite 400**

City/State/Zip: **San Ramon, CA  94583**         *Deed of Trust*

_____

If legal description is a metes & bounds description furnish the following information:

Legal Description obtained from _____ (type of document), Book _____

Page _____ Document # _____ recorded _____ (date) in the

County Recorder office.

If Surveyor, please provide name and address.

_____
_____
_____

This page added to provide additional information required by NRS 111.312 and NRS 239B.030.
(Additional recording fee applies)

This cover page must be typed.

NV Affirmation Cover Sheet – 2/06
IDS, Inc.

EXHIBIT B

Assessor's Parcel Number: **177-36-612-032**

RECORDING REQUESTED BY, AND
WHEN RECORDED, MAIL TO:
**CMG Mortgage, Inc**
**3160 Crow Canyon Road, Suite 400**
**San Ramon, CALIFORNIA 94583**

This instrument was prepared by:
**CMG Mortgage, Inc**
**3160 Crow Canyon Road, Suite 400**
**San Ramon, CALIFORNIA 94583**

Mail Tax Statements To:
**CMG Mortgage, Inc**
**3160 Crow Canyon Road, Suite 400**
**San Ramon, CALIFORNIA 94583**

I hereby affirm that this document submitted for recording does not contain any personal information about any person(s) as defined by NRS 603A.040 on the document.

Signature: **THU LE**
Printed Name & Title:

[Space Above This Line For Recording Data]

**State of Nevada**

# DEED OF TRUST

FHA Case Number:

MIN:
SIS Telephone #:

THIS DEED OF TRUST ("Security Instrument") is made on **May 5, 2014**.

The Grantor is **ANASTASIA KARAMANIDES, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY**, ("Borrower").

The trustee is **FIDELITY NAITONAL TITLE AGENCY OF NEVEDA, INC**, ("Trustee").

The beneficiary is **Mortgage Electronic Registration Systems, Inc. ("MERS")**, (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MICHIGAN 48501-2026**, tel. **(888) 679-MERS**.

---

**FHA Nevada Deed of Trust with MERS – 4/96**

Page 1 of 8

IDS, Inc.

**Amended 10/09**

Borrower(s) Initials

CMG Mortgage, Inc, #1820, ("Lender")
is organized and existing under the laws of **CALIFORNIA,**
and whose address is **3160 Crow Canyon Road, Suite 400, San Ramon, CALIFORNIA 94583.**

Borrower owes Lender the principal sum of **TWO HUNDRED SEVENTY-NINE THOUSAND EIGHT HUNDRED THIRTY-SEVEN AND NO/100,** Dollars (U.S. **$279,837.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **June 1, 2044.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **CLARK** County, Nevada:

> **LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

which has the address of **2722 PORT LEWIS AVENUE**
                        **HENDERSON, NEVADA 89052,** ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures

---

Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs l and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

---

**FHA Nevada Deed of Trust with MERS – 4/96**

Amended 10/09

IDS, Inc.

Borrower(s) Initials

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

---

**FHA Nevada Deed of Trust with MERS – 4/96**
Amended 10/09

IDS, Inc.

Borrower(s) Initials

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

---

**FHA Nevada Deed of Trust with MERS – 4/96**                    Amended 10/09

IDS, Inc.                                          Borrower(s) Initials

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the**

---

FHA Nevada Deed of Trust with MERS – 4/96

Amended 10/09

IDS, Inc.

Borrower(s) Initials

highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $_____.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider            ☐ Graduated Payment Rider        ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider   ☐ Growing Equity Rider          ☐ Other:

---

**FHA Nevada Deed of Trust with MERS – 4/96**                    Amended 10/09

IDS, Inc.                                        Borrower(s) Initials _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____  -Witness

_____ (Seal)
ANASTASIA KARAMANIDES          -Borrower

_____  -Witness

_____ (Seal)
                                -Borrower

STATE OF NEVADA,    Clark                County ss:

The foregoing instrument was acknowledged before me this ᵘᵗ day of _May_____
___2014___ by ANASTASIA KARAMANIDES.
Witness my hand and official seal.

My Commission Expires:    March 26, 2016
(Seal)

_____
Notary Public  **Leslie B. Bales, Notary Public**

CMG Mortgage Consultant: **JOSEPH C CORDONE**, NMLS #**366298**.
Sponsored by Creditor: CMG Mortgage, Inc., NMLS #1820

> LESLIE B. BALES
> NOTARY PUBLIC, STATE OF NEVADA
> My Commission Expires: 3-26-16
> Certificate No: 92-0125-1

**FHA Nevada Deed of Trust with MERS – 4/96**                **Amended 10/09**
Page 8 of 8
IDS, Inc.

Order No.: ███████████

# EXHIBIT A

**LOT THREE (3) IN BLOCK C OF MARYLAND/EASTERN NORTH NO.3 - BY LEWIS HOMES, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 85 OF PLATS, PAGE 5, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.**

Assessor's Parcel Number:  177-36-612-032

**EXHIBIT C**

Inst #: 20160617-0001853
Fees: $17.00
N/C Fee: $25.00
06/17/2016 01:48:57 PM
Receipt #: 2794772
Requestor:
TITLE SERVICES OF NEVADA, L
Recorded By: GWC  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

Cenlar FSB
FC-236
425 Phillips Boulevard
Ewing, NJ 08618

APN 177-36-612-032

| File No. | Title Order | MIN No. |
|---|---|---|
| MERS ADD: PO BOX 2026 | | MERS Phone: |
| Flint, MI 48501-2026 | | |

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for CMG Mortgage, Inc., #1820, its successors and assigns,** hereby grants, assigns and transfers to      **Pingora Loan Servicing, LLC**      interest under that certain Deed of Trust dated **05/05/14**, executed by  **Anastasia Karamanides, a married woman, as her sole and separate property to Fidelity Naitonal Title Agency of Nevada, Inc.,** as Trustee; and recorded **05/08/14**, as Instrument No. **20140508-0002013** of Official Records in the County Recorder of **Clark** County, Nevada.

Property Address:  2722 PORT LEWIS AVENUE HENDERSON, NV 89052

TOGETHER with the right to have reconveyed, in whole or in part the real property described therein.

> **Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for CMG Mortgage, Inc., #1820, its successors and assigns**
>
> By:_____ *Mark F. Kelbaugh* _____
> Mark F. Kelbaugh / Asst. V.P.

State of New Jersey
County of Mercer

On June 14, 2016, before me, _____ **Evelyn De Leon** _____ Notary Public, personally appeared Mark F. Kelbaugh, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same and his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of New Jersey that the foregoing paragraph is true and correct.
WITNESS my hand and official seal

_____ Evelyn De Leon _____

EXHIBIT C

**EXHIBIT D**

2722 Port Lewis Ave, Henderson, NV 89052 | Zillow



**GET MORE INFO**    ♡ **SAVE**    ⊘ **HIDE**    **GET UPDATES**    **SHARE**    **MORE** ▾

[ City, State, or Zip    🔍 ]

Public View    Owner View

Nevada · Henderson · 89052 · Westgate · 2722 Port Lewis Ave





# 2722 Port Lewis Ave, Henderson, NV 89052

**5 beds · 3 baths · 2,346 sqft**

**SOLD:**
**$285,000**
Sold on 05/08/14

Zestimate®:
**$320,071**

Price this home

## Home Shoppers are Waiting

143 shoppers are looking in your neighborhood and price range.

[ 👤 Your name ]

[ 📞 Phone ]

[ ✉ Email ]

[ I own this home and would like to ask an agent about selling 2722 ]

Contact Agent

Or call 702-761-3105 for more info

### Thinking About Selling?
Find a local agent who can give you a professional estimate of your home value.

Find an Agent

This 2346 square foot single family home has 5 bedrooms and 3.0 bathrooms. It is located at 2722 Port Lewis Ave Henderson, Nevada. The nearest schools are Taylor Glen, Taylor Glen, Miller Bob and Coronado High.



EXHIBIT D

**EXHIBIT E**



RCO LEGAL, P.S.

Brett P. Ryan
Attorney
bryan@rcolegal.com

2520 St. Rose Parkway, Suite 106
Henderson, NV 89074

Telephone: 702.854.9965
Fax: 425.974.8665
www.rcolegal.com

November 23, 2016

**<u>VIA MAIL</u>**
Anastasia Karamanides
2722 Port Lewis Avenue
Henderson, NV 89052

RE:    2722 Port Lewis Avenue, Henderson, NV 89052
Our File No: 232169
<u>Court Case No: 16-16106-btb</u>

Dear Ms. Karamanides:

We have been retained by Cenlar, FSB to file a motion for relief regarding the above-referenced property.  In accordance with LR 4001(a)(2) we are reaching out you to try to resolve this without filing the motion.  If you have any suggestions on how to resolve this, please let me know as soon as possible, as we plan on filing our motion shortly.

Please feel free to contact our office if you have any other questions.

Very truly yours,

Brett P. Ryan, Esq.

EXHIBIT E